UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DEBORAH KELLEY,

                     Plaintiff,

v.                                                                                           Case No. 5:08-cv-5-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                     Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income (SSI) benefits. (Doc. 1.) The Commissioner has answered (Doc. 15) and both parties have filed briefs outlining their respective positions. (Docs. 21 & 22.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On January 26, 2004, Plaintiff filed an application for SSI claiming a disability onset date of June 27, 1989. (R. 58-61.) Plaintiff's applications were denied initially and upon reconsideration. (R. 41-43, 46-49.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 53.) The ALJ conducted Plaintiff's administrative hearing on November 16, 2006. (R. 477-93.) The ALJ issued a decision

unfavorable to Plaintiff on December 26, 2006. (R. 14-24.)  The Appeals Council denied Plaintiff's request for review. (R. 7-9.)  Plaintiff then appealed to this Court.   (Doc. 1.)[1]

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] Plaintiff obtained an extension of time to file this action.  (R. 5-6.)

[2] See 42 U.S.C. § 405(g).

[3] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] See Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty-six (46) years old at the time of the hearing. (R. 480.) Plaintiff has a seventh-grade education. (R. 75.) From March 2001 through December 2002, Plaintiff worked as an aluminum installer. (R. 70, 82.) Plaintiff contends that she has been unable to work since December 16, 2002 because of back, neck, arm and shoulder pain. The relevant time period for deciding Plaintiff's case is the month in which she filed her SSI application – January 2004 – and thereafter.[23]

---

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

[23] An individual cannot receive SSI benefits for any period prior to the month in which she filed her application. See 20 CFR §§416.330, 416.335.

Plaintiff reported being beaten up by a police officer in the 1980s which resulted in a lower back injury and a disc protrusion at L4-5. (R. 428.) In July 1999, Plaintiff was in a motor vehicle accident which resulted in injury to her spine. A July 29, 1999 MRI of the cervical spine showed disc bulges at C5-6 and C6-7 (R. 155) and a MRI of the brain was normal. (R. 156.) Plaintiff underwent chiropractic treatment and physical therapy. According to her chiropractor, Plaintiff reached maximum medical improvement on or about January 19, 2000. (R. 182-83.)

In March 2001, Plaintiff returned to work as an aluminum installer and engaged in substantial gainful activity through December 2002. Plaintiff injured herself on the job in December 2001 and she was released back to full-time work activity by mid-March 2002. (R. 232.) A February 5, 2002 MRI of the cervical spine was stable "compared to [July 29, 1999] without central canal stenosis or neural foraminal encroachment." (R. 235.) An April 12, 2002 MRI of the right shoulder joint/upper extremity revealed no rotator cuff tear, retraction, or atrophy. (R. 240.)

In May 2002, Plaintiff was seen by David R. Miller, D.O. for a general consultative examination. (R. 271-82.) Her chief complaint was arthritis with pain in her feet, hands, neck, back and right shoulder. She also reported problems with palpitations, depression, anxiety, insomnia and concentration. Plaintiff was taking Atenolol, Zoloft, Restoril, Flexeril, and Vicodin. Dr. Miller noted that Plaintiff had no trouble interacting with him and his staff and that her psychiatric presentation was appropriate.

From August 2002 through March 2003, Plaintiff was evaluated for a possible heart condition due to allegations of dizziness and heart palpitations, but evaluation by a

6

cardiovascular specialist showed no significant abnormalities. (R. 242-59, 265-70.) High blood pressure was controlled with medication.

In September 2003, Plaintiff was seen at an arthritis clinic and prescribed medication but she did not appear for scheduled examinations in November and December 2003. (R. 260-64.)

In March 2004, Plaintiff began treatment with Terrell B. Bounds, M.D. for pain related to her right shoulder (R. 393-94.) On August 3, 2004, Dr. Bounds performed surgery to repair Plaintiff's rotator cuff. (R. 380-84.) She participated in physical therapy after surgery. (R.287-300.) By December 10, 2004, Plaintiff's condition had reached maximum medical improvement, with a 3% impairment of her right upper extremity. (R. 372.) On March 18, 2005, Plaintiff's range of motion of her right shoulder was within normal limits. (R. 369.) On July 7, 2005, there was no restriction of motion in the right shoulder. (R. 367.) On April 12, 2006, Plaintiff's range of motion of her right shoulder was within normal limits. (R. 465.)

On July 5, 2004, Plaintiff was seen by Scot D. Machlus, Ph.D. for a consultative evaluation with mental status. (R. 283-86.) Plaintiff reported that she was depressed "related to her physical condition and not being able to do what she used to do" and that as a result she had a depressed mood, a 25-pound weight gain, difficulty sleeping, poor concentration, anhedonia, irritability, feelings of hopelessness, and suicidal ideation. She stated that her arthritis doctor had been prescribing her Zoloft for depression and Restoril for sleep for the past six months and that her only other mental health treatment was in 1995 when she was Baker Acted because of attempting to commit suicide after a fight with her boyfriend. She reported spending most of her days watching television

7

and that she does not have friends or engage in any social activities. She reported drinking a 12-pack of beer per week and smoking two packs of cigarettes per day.

On mental status examination, Dr. Machlus noted that Plaintiff's answers were relevant and coherent and her conversation was spontaneous and productive. She exhibited no evidence of a thought disorder, her thinking was concrete, there was no looseness of associations, tangential thought or circumstantiality and she denied having hallucinations or delusions. Plaintiff's mood and affect was appropriate and while she had thought about suicide she had no present intent. Dr. Machlus further noted Plaintiff's sensorium appeared clear; she was oriented to time, place and person; she was able to recall the present and past president; her intellectual functioning appeared to be in the low average range; her attention and concentration were in the average range; and her remote memory and ability to give accurate historical information appeared to be appropriate. Dr. Machlus noted that Plaintiff's judgment and insight appeared to be fair. Dr. Machlus diagnosed Plaintiff with Major Depression, chronic, severe and a GAF fo 52. With respect to her prognosis, Dr. Machlus opined:

> The claimant's prognosis appears to be mostly dependent on her physical capabilities. She reported being depressed related to her medical conditions and not being able to function as she had. It is recommended that the claimant receive psychological treatment in addition to continuing psychotropic medications to help with her depression.

On December 7, 2004, Plaintiff was referred to Thomas M. Newman, M.D. for consultation by her worker's compensation insurance carrier. (R. 350-52.) Dr. Newman ordered several tests. An MRI of Plaintiff's cervical spine on January 5, 2005 showed far right lateral disc protrusion at C4-5 (R. 346) and a nerve conduction study showed right ulnar nerve entrapment at the elbow. (R. 348-49.)

8

On July 2005, Plaintiff was seen by Denise K. Griffin, M.D. for a compulsory neurological medical evaluation related to her worker's compensation claim. (R. 424-43, 444-46.) Dr. Griffin noted that Plaintiff reported that her shoulder pain was about a "1000% better" since the surgery but that her range of motion is diminished. (R. 427.) She reported continuous neck pain, headaches and problems involving her right elbow. Plaintiff reported spending her days "sitting around, getting depressed." On examination, mental status was intact, language was normal and fluent, and affect was appropriate. Dr. Griffin administered several tests including the Center for Epidemiologic Studies - Depressed Mood Scale and Plaintiff's score was consistent with a depressed mood. Dr. Griffin diagnosed Plaintiff with cervical/trapezius strain; degenerative disc protrusion, C5-6; right ulnar neuropathy, elbow; right temporal headaches; and prior traumas.

From December 2005 through July 2006, Plaintiff was treated by Dr. Anas Morereiden for fibromyalgia. (R. 447-49.) On December 27, 2005, Plaintiff had sixteen positive points for fibromyalgia. (R. 449.) On July 19, 2006, Dr. Morereiden noted that Plaintiff's fibromyalgia was still active. (R. 447.) Dr. Moreiden prescribed medication, including Zoloft.

There are two Physical RFC Assessments of record completed by non-examining state agency consultants – Caroline L. Moore, D.O. on June 29, 2004 (R. 309-16) and James J. Green, M.D. on September 23, 2004 (R. 301-08.) Both found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. Green also found that Plaintiff could only occasionally push and/or pull

9

or reach overhead with her right arm, limited her to occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling and never climbing ladder/rope/scaffolds, and opined that she should avoid concentrated exposure to hazards.

There are also two Psychiatric Review Techniques completed by non-examining state agency consultants – Arthur H. Hamlin, Psy.D. on July 12, 2004 (R. 331-44) and James Mendelson, PhD on September 27, 2004 (R. 317-30.) Both experts found that Plaintiff's affective disorders were not severe and resulted in no more than mild limitations.

At the hearing, Plaintiff testified that she has a herniated disc in her back, herniated disc and bulges in her neck, a "trapped nerve" in her elbow, and right shoulder pain. (R. 482.) Plaintiff testified that as a result of those injuries, she cannot use her right arm. (R. 482.) She reported constant neck, back and feet pain. (R. 483.) Plaintiff testified that she "live[s] in bed" and that she gets some relief from pain pills. (R. 483.) Plaintiff also reported having depression that was pretty bad "not too long ago." (R. 484.) Plaintiff reported suicidal thoughts and not wanting to see anybody but that the medication was helping a little. (R. 484.) Plaintiff also reported having fibromyalgia, that caused constant pain everywhere. (R. 492.)

According to Plaintiff, on a typical day, Plaintiff spends most of the day in her room and "once in awhile" she will cook and sweep and mop the floors. (R. 485.) She testified that she could pick up and carry no weight with her left hand and probably 10 pounds with her right hand; has trouble walking and cannot go very far; and can sit for 30-45 minutes before she has to get up and move around (R. 485.) Plaintiff reported

napping for a few hours. (R 486.) Plaintiff drives but she has to stop after two and a half or three hours to get out and walk around for a few minutes. (R. 486.) Plaintiff testified that she has no side effects from medications. (R. 486.)

Vocational expert, Theresa Manning testified. (R. 488-92.) The ALJ asked the VE to assume that Plaintiff could perform a limited range of light work, was limited to only occasional (1/3 of an 8-hour day) pushing, pulling and reaching activities with her right arm, and should have no concentrated exposure to vibrations and extremes of cold. (R. 489.) The VE testified that the hypothetical individual could not perform any of Plaintiff's past relevant work but could perform other work that exists in the national economy, including: garment sorter, DOT number 222.687-014; photograph processor, DOT number 976.487-010; and copy machine operator, DOT number 207.685-014. (R. 490.) Second, the ALJ asked the VE whether the addition of occasional fine and gross manipulations with her right hand would change the VE's testimony. The VE replied that her testimony would not change because she "made the assumption if the right arm could only be used occasionally that would mean the right hand would follow suit." (R. 491.)

Based on his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had degenerative disc disease of the cervical and lumbar spine, a right rotator cuff tear with impingement syndrome (surgically corrected), and right ulnar nerve entrapment. (R. 16.) The ALJ found that Plaintiff's history of controlled hypertension, occasional tension-type headaches, and mild depression had no more than a minimal effect overall on her functional capacity and that the evidence did not support a finding that Plaintiff

11

and severe fibromyalgia or severe arthritis in the hands, feet or knees.  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.  (R. 16.)

The ALJ then found that Plaintiff retained the RFC to perform a wide range of light work activity. (R. 19.)   Specifically, the ALJ found that Plaintiff is capable of lifting/carrying up to twenty pounds occasionally and ten pounds frequently with the ability to stand or walk up to six hours and sit up to six hours in an eight-hour day. (R. 23-24.)  The ALJ limited Plaintiff to occasional performance of gross and fine manipulation with the right hand and occasional pushing, pulling and reaching with the right upper extremity.  He directed that she avoid concentrated exposure to vibrations and to extreme cold.

The ALJ concluded that Plaintiff could not perform her past relevant work, but that she could perform jobs that exist in significant numbers in the national economy. (R. 24.)  In reaching this conclusion, the ALJ relied on the testimony of a vocational expert.  Accordingly, the ALJ found that Plaintiff was not disabled.

## IV.  DISCUSSION

Plaintiff raises two arguments on appeal – (1) that the ALJ erred in relying on testimony by the vocational expert; and (2) that the ALJ erred in his evaluation of the opinion of a consultative psychologist, Dr. Machlus.

### A. The ALJ properly relied on testimony by the Vocational Expert

Plaintiff argues that the ALJ erred in relying on VE testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT".)[24] Specifically, Plaintiff argues that there is an inconsistency between the description of the jobs in the DOT and the VE's testimony that the jobs of garment sorter, photograph processor and copy machine operator could be performed with limitations of occasional pushing, pulling and reaching with the right upper extremity and occasional gross and fine manipulative functioning with the right hand. Plaintiff argues that the case should be reversed and remanded because the ALJ failed to explain and resolve the conflict between the VE's testimony and the DOT as required by Social Security Ruling ("SSR") 00-04p.

Prior to the promulgation of SSR 00-04p, the Eleventh Circuit considered the issue of how to resolve a conflict between the testimony of a VE and the DOT. In Jones v. Apfel,[25] the Eleventh Circuit held that ". . . when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." The Court reasoned that the VE's testimony may be followed because the DOT "is not the sole source of admissible information concerning jobs" and that by its own wording "the SSA itself does not consider the DOT dispositive." Accordingly, under Jones an ALJ may rely upon the testimony of a VE without first resolving any conflict with the DOT.

---

[24] The DOT is a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy and specifies the general educational requirements including the level of reasoning skills required for each job. See Brijbag v. Astrue, 2008 WL 276038 *2, n.2 (M.D. Fla. January 31, 2008.)

[25] 190 F.3d 1224, 1229-30 (11th Cir. 1999.)

Although SSR 00-04p was promulgated after Jones was decided, it does not undo the rule in Jones[26] nor does SSR 00-04p expressly mandate that an ALJ has a duty to independently investigate whether there is a conflict between the VE's testimony and the DOT. Rather, SSR 00-04p merely obligates the ALJ to ask the VE if there is a conflict and if the VE identifies a conflict the ALJ is required then – and only then – to address the conflict in his decision and resolve it.[27]

Here, the ALJ specifically instructed the VE during the hearing, "if anything you testify to is inconsistent with information in the DOT I want you to notify me at the time you provide that testimony, please explain the inconsistency and the reason for it." (R. 489.) The VE responded "[o]kay." (R. 489.) During the hearing, the VE did not identify any conflicts between her testimony and the DOT, nor did the Plaintiff (who was represented by counsel) raise any conflicts or otherwise challenge the VE's testimony.

---

[26] After the promulgation of SSR 00-04p, the Eleventh Circuit held in an unpublished opinion that because social security rulings do not bind the courts, even where an inconsistency exists between the testimony of a VE and the DOT, an ALJ is entitled to rely upon the testimony of the VE, without first resolving the conflict. See Miller v. Comm'r of Soc. Sec., No. 07-11364, 2007 WL 2461771, at *2 (11th Cir. Aug. 31, 2007.) The Court reasoned that the rule in Jones – that the "VE's testimony trumps the DOT" – is binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-4p.

[27] See, e.g., Martin v. Commissioner of Social Security, 170 Fed. Appx. 369, 2006 WL 509393, at *4-5 (6th Cir. 2006)(unpublished)(holding that "[n]othing in SSR-004p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct" and therefore "[b]ecause [theVE] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved."); Haas v. Barnhart, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004)(where conflict not brought to the attention of the ALJ it was not reversible error for the ALJ to rely upon the testimony of the VE); Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. 2003)(no error under SSR 004p where the VE did not identify conflicts with the DOT); Brijbag v. Astrue, No. 8:06-cv-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008)("the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT"); Lembke v. Barnhart, 2006 WL 3834104 *15 (W.D. Wis. 2006)(reversal is not warranted where plaintiff identifies a conflict after the hearing but during the hearing no conflict was identified so long as the ALJ complied with SSR-004p by asking the VE at the hearing to identify conflicts);

Nevertheless, Plaintiff argues that the conflict was so obvious that the ALJ should have known that a conflict existed.[28] As an initial matter, the parties do not agree that a conflict actually exists. While the DOT states that the jobs of garment sorter, photograph processor and copy machine operator may require frequent reaching, handling and/or fingering,[29] and the ALJ found that Plaintiff was limited to occasional use of her right arm and right hand, he found no limitations for Plaintiff's left arm or hand. Plaintiff has failed to show (or explain) why she could not perform the reaching, handling and/or fingering requirements of the job using both of her arms and hands. However, even if there is an actual conflict between the VE's testimony and the DOT, the Court is unpersuaded that the conflict is so obvious that the ALJ should have recognized the conflict on his own. Moreover, as discussed above, the Eleventh Circuit has held that the ALJ may rely upon the testimony of a VE without first resolving an alleged conflict with the DOT.[30]

---

[28] Plaintiff argues that the ALJ should have realized that the VE's opinion also was based upon an inaccurate assumption that a job requiring only occasional reaching would necessarily only include occasional manipulative requirements. However, Plaintiff appears to misconstrue the VE's testimony. The ALJ first asked the VE to assume that Plaintiff limited to only occasional (1/3 of an 8-hour day) pushing, pulling and reaching activities with her right arm. (R. 489.) The VE testified that the hypothetical individual could not perform any of Plaintiff's past relevant work but could perform other work that exists in the national economy. The ALJ then asked the VE whether the addition of occasional fine and gross manipulations with her right hand would change the VE's testimony. The VE replied that her testimony would not change because she "made the assumption if the right arm could only be used occasionally that would mean the right hand would follow suit." (R. 491.) Thus, in answering the first hypothetical, the VE had assumed that because her right arm could only be used occasionally to push, pull and reach then her right hand could only be used occasionally too. Contrary to Plaintiff's argument, the VE did not assume that the DOT information regarding the frequency of upper extremity movements and gross and fine hand movements were the same.

[29] According to the DOT, the job of garment sorter requires frequent reaching and handling and occasional fingering; the job of photograph processor requires frequent reaching, handling and fingering; and the job of copy machine operator requires frequent reaching, handling and fingering.

[30] See Miller v. Comm'r of Soc. Sec., 2007 WL 2461771 at *2 (11th Cir. 2007)(per curiam.)

Accordingly, because the ALJ had no obligation to resolve a conflict that was not identified at the hearing, and that was not otherwise apparent, and in view of the fact that the law in this Circuit provides that an ALJ may rely upon the testimony of a VE even if it is in conflict with the DOT, the ALJ did not err by relying upon the testimony of the VE in concluding that Plaintiff was not disabled because there were a substantial number of jobs available in the national economy which Plaintiff could perform at her given RFC.

### B.     The ALJ properly evaluated the opinion of Dr. Machlus

Plaintiff argues that the ALJ mischaracterized and then discredited the opinion of Dr. Machlus, a consultative psychologist.  Dr. Machlus diagnosed Plaintiff with Major Depression, chronic, severe and a GAF of 52.   With respect to her prognosis, Dr. Machlus opined:

> The claimant's prognosis appears to be mostly dependent on her physical capabilities.  She reported being depressed related to her medical conditions and not being able to function as she had.  It is recommended that the claimant receive psychological treatment in addition to continuing psychotropic medications to help with her depression.

(R. 286.)

In discussing Dr. Machlus' report, the ALJ wrote, "[a]lthough major depression was diagnosed, the examining psychologist indicated that its severity was linked to the claimant's physical condition which, overall, I have not found to be as limiting as the claimant alleges." (R. 18.)

Plaintiff argues that the ALJ mischaracterized Dr. Machlus' report.  Specifically, Plaintiff contends that the ALJ erroneously stated that Dr. Machlus found that the existence of the condition was solely the result of a physical condition – when in fact Dr.

16

Machlus stated that the likelihood of Plaintiff's recovery was mostly dependent on her physical condition. Plaintiff contends that as a result of this mischaracterization, the ALJ improperly concluded that Plaintiff did not even suffer from minimally severe mental limitations.

However, even if the ALJ mischaracterized Dr. Machlus' report, Plaintiff has failed to identify any record evidence suggesting that she had functional limitations resulting from her depression. A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities.[31] Although Dr. Machlus diagnosed Plaintiff with depression, that does not establish that the depression would interfere with Plaintiff's ability to perform work activities.[32]

Dr. Machlus did not identify any functional limitations resulting from Plaintiff's depression. Indeed, Dr. Machlus did not note any significant findings on mental status examination, and instead noted that Plaintiff's conversation was spontaneous and productive; her answers were relevant and coherent; her thinking was concrete; she exhibited no evidence of a thought disorder and had no looseness of associations, tangential thought, or circumstantiality; she denied hallucinations and delusions; her mood and affect were appropriate and while she had thought about suicide she had no present intent; her sensorium appeared clear; she was oriented to time, place and person; she was able to recall the present and past president; her intellectual functioning appeared to be in the low average range; her attention and concentration

---

[31] 20 C.F.R. §§ 416.920(c), 416.921(a); Bridges v. Bowen, 815 F.2d 622, 625

[32] See Moore v. Barnhart, 405 F.3d 1208, 1213, n. 6; see also, Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition.")

17

were the in the average range; her remote memory and ability to give accurate historical information appeared to be appropriate; and her judgment and insight appeared to be fair.

To the extent Plaintiff is arguing that Dr. Machlus' notation of a GAF score of 52 was an opinion regarding her functional limitations, that argument is without merit. According to the DSM-IV-TR, a GAF score reflects the examiner's opinion regarding an individual's symptoms or possible difficulty in social, occupational, or school functioning.[33] However, a GAF score "does not itself necessarily reveal a particular type of limitation and 'is not an assessment of a claimant's ability to work '" and Dr. Machlus did not offer any explanation in his report regarding the GAF score.[34] Moreover, the Commissioner has specifically declined to endorse the GAF scale for use in the disability programs, and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings."[35] Accordingly, an opinion regarding GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations.

Moreover, the other evidence in the record supports the ALJ's finding that Plaintiff did not have a severe impairment. Without identifying any specific records, Plaintiff vaguely asserts that "[a]t various points throughout the record, [Plaintiff] was diagnosed with depression." (Doc. 21 at 16.) However, other than noting that Plaintiff

---

[33] See DSM-IV-TR at 32-34.

[34] See e.g., Ward v. Astrue, 2008 WL 1994978, at *3 (M.D. Fla. 2008).

[35] Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50,764-65 (Aug. 21, 2000.)

had depression, and prescribing anti-depressants, no doctor noted any significant problems related to the depression or identified any limitations regarding Plaintiff's ability to work. The lack of mental health treatment, as well as the limited notations of mental health issues, support the ALJ's conclusion that Plaintiff's alleged symptoms were controlled by her medication. Finally, both of the state agency psychological consultants – Hamlin and Mendelson – found that Plaintiff's mental impairment was not severe and resulted in no more than mild limitations.

Accordingly, the ALJ's finding that Plaintiff's depression was not a severe mental impairment was supported by substantial record evidence.

## V.  CONCLUSION

Based on the foregoing, the Commissioner's decision is due to be **AFFIRMED.** The Clerk is directed to enter judgment in favor of the Commissioner and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 26, 2009.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:

All Counsel